Case 5:18-cv-00311-SLP   Document 1-5   Filed 04/06/18   Page 1 of 11

CJ-18.- 1177
Timmons



## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| INVESTIGATIVE CONCEPTS, INC., a corporation,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>FIRST MERCURY INSURANCE COMPANY, a foreign insurance corporation, and El DORADO INSURANCE AGENCY, INC., a foreign corporation<br><br>　　　　　　　　Defendant. | FILED IN DISTRICT<br>OKLAHOMA COUNTY<br>MAR -1 2018<br>RICK WARREN<br>40_____ COURT CLERK<br><br>Case No:<br>**CJ-2018-1177**<br><br>**JURY TRIAL DEMANDED** |

### PETITION

COMES NOW the Plaintiff, Investigative Concepts, Inc., and for its causes of action against the Defendants alleges and states:

1.　Plaintiff, Investigative Concepts, Inc., ("ICI") is a domestic for profit business corporation, incorporated and doing business in the State of Oklahoma.

2.　Defendant, First Mercury Insurance Company, ("FMIC") is a foreign corporation incorporated and domiciled in the State of Delaware and maintains its principal place of business in a state other than Oklahoma. FMIC is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

EXHIBIT 5

3. Defendant, El Dorado Insurance Agency, Inc., on best information and belief, is a Texas corporation and maintains its principal place of business in Houston, Texas.

4. At all times material hereto, Plaintiff was insured with FMIC by a commercial general liability coverage written through the broker, El Dorado Insurance Agency. The Defendant, El Dorado Insurance Agency and its representatives acted as agents of the Defendant, FMIC.

5. For many years, ICI carried this CGL policy through the Defendants which included Errors and Omissions (E&O) coverage that paid for all sums that the insured became legally obligated to pay as damages resulting from errors and omissions in the practice of your business. In the 2016 renewal of the policy, the E&O coverage was replaced by a Professional Liability Coverage Endorsement that promised to pay those sums that the insured became legally obligated to pay as damages resulting from negligent acts, errors or omissions in the practice of your business as identified in the schedule above. The schedule identified ICI's business as detective or investigative agencies/private.

6. ICI's identified investigative business was over 80% doing employment background checks, along with some drug testing and other miscellaneous investigative services.

7. ICI had purchased their coverage for errors and omissions in the practice of their business through El Dorado Insurance Agency, Inc., because they were a vendor at a convention for investigative services businesses and held themselves out to

be a specialist in providing E&O/professional liability coverage for the activities of such investigative businesses.

8. In doing a background check, ICI erroneously reported a felony conviction for a Justin Norman. ICI had even checked with the county court under a factual scenario with uncanny resemblances between two different persons named Justin Norman. The court clerk provided the erroneous information to ICI. Justin Norman sued ICI in January 2017 for the erroneous information in the background check performed by ICI.

9. Justin Norman's suit against ICI identified that ICI is a business entity that provides employment screening services, that ICI is a consumer reporting agency and that its business subjects the claims against it to the FCRA (Fair Credit Reporting Act).

10. ICI made demand upon its insurance company, FMIC, to defend and indemnify it under the policy coverage. FMIC denied the claim citing exclusions in the policy for any acts involving the FCRA.

11. ICI appealed the denial pointing out that ICI had always carried E&O coverage and that the exclusions claimed by FMIC would have effectively failed to cover ICI for any errors and omissions in the practice of its business rendering the coverage illusory. ICI noted that the policy should provide coverage for the negligence or errors or omissions of this business as was clearly intended by the policy coverage.

12. In response, FMIC, without investigating or addressing the circumstances of the coverage issued to ICI, simply stood on their denial. In fact, FMIC pointed out that any negligence or other common law claims against ICI in the performance of their business in providing these background checks would be preempted by the FCRA –

effectively affirming ICI's contention that the policy effectively excluded all of these business services of ICI which the policy also purported to insure.

13. FMIC wholly failed to fully investigate, properly evaluate, or even consider its responsibility under the applicable law and this policy for reformation of this policy for the true intent of the parties, for resolving ambiguities and inconsistencies in favor of its insured and for their legal liability to honor coverage they know was represented to their insured. Instead, FMIC definitely asserted that the fine print in their revised endorsement to the policy coverage excluding claims that involve the FCRA would preempt and preclude coverage for any claim of any kind against ICI for any negligence or errors or omissions in connection with the principal practice of its business.

14. Plaintiff submitted this claim to FMIC and otherwise complied with all conditions precedent to recovery under the subject commercial general liability coverage policy.

15. FMIC breached the subject insurance contract by wrongfully denying Plaintiff's claim.

16. FMIC breached the implied covenant of good faith and fair dealing in the insurance contract, in accord with its routine practice for the handling of such claims, in the following respects:

   a. failing and refusing payment and other policy benefits on behalf of Plaintiff at a time when Defendants knew that it was entitled to those benefits;

   b. failing to properly investigate Plaintiff's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

   c. withholding payment of the benefits on behalf of Plaintiff knowing that Plaintiff's claims for those benefits were valid;

d. refusing to honor Plaintiff's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e. refusing to honor Plaintiff's claims in some instances by applying restrictions not contained in the policy;

f. refusing to honor Plaintiff's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiff's claims;

h. not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claims once liability had become reasonably clear;

i. forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendants knew were payable;

j. failing to properly evaluate any investigation that was performed;

k. failing to follow the laws of insurance policy construction, including resolving any ambiguity in favor of coverage for their insured;

l. refusing to consider the reasonable expectations of the insured;

m. failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

n. forcing their insured to bear the consequences of FMIC's own errors and negligence in the policy issuance rather than being responsible for their own error.

o. failing and refusing to honor their known obligation under the law for legal liability for the acts of their agents;

p. failing and refusing to properly reform the policy to the true intent of the parties as required under the applicable law.

all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to FMIC.

17. FMIC promised ICI commercial general liability insurance coverage that at all times promised specific liability coverage for negligent acts, errors and omissions in the practices of your business. In fact, FMIC held themselves out in a fiduciary role as

providing exemplary and specialized coverage for just such investigative services and any errors and omissions that might result therefrom. In reliance upon FMIC's actions, Plaintiff carried their coverage through FMIC, paid their premiums and failed to garner other insurance to protect the practices of their business and FMIC has waived and is estopped to assert their FCRA exclusions to this promised coverage.

18.   These claims of breach of contract and bad faith are against the Defendant, FMIC only and not against the Defendant El Dorado.

19.   As a direct result of FMIC's breach of contract and bad faith Plaintiff has suffered loss of the policy benefits, loss of the coverage promised by FMIC, loss of clientele business, costs to mitigate damages and other damages.

20.   FMIC recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and act in good faith and Plaintiff is entitled to recover punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, First Mercury Insurance Company, for his damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

### SECOND CLAIM FOR RELIEF

### FALSE REPRESENTATION, CONCEALMENT AND DECEIT

This claim is against Defendants, FMIC and El Dorado. Plaintiff realleges all previous allegations and further alleges and states:

21. The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much specificity as is currently known to the Plaintiff. Years ago, just prior to the issuance of the first policy by these Defendants to this Plaintiff, Scott Good of ICI was attending a conference for investigative services companies like ICI. The Defendant's representatives were at the conference as a vendor and spoke to Mr. Good representing that they specialized in insurance coverage for investigative services and could provide liability coverage tailored to protect his company from errors and omissions that might occur in connection with their employment background checks. The conference addressed many of the issues and matters involved in such background checks and the Defendant's representatives specifically represented that they could provide liability coverage tailored to protect Mr. Scott's business in the event of errors and omissions in connection with such background checks. Every year since that time, ICI paid premiums for this liability coverage and the Defendants issued coverage which purported to provide liability coverage for errors and omissions in connection with <u>this business</u>. All such policies contained either a specific errors and omissions endorsement, or a professional liability coverage endorsement promising to provide the liability coverage that had been originally promised by the representatives. In connection with each annual renewal, the Defendants always asked specific detail about the nature of the business that they were providing this professional liability coverage insurance and ICI consistently advised that the business they were insuring predominately involved employment background checks. Because of the specific representations of liability coverage for the errors and omissions of this business, the

Defendants had a duty to disclose if there were some provision that entirely eliminated the promised coverage for most all the activities and services of this business. The Defendants concealed and wholly failed to disclose anything about the broad sweeping FCRA exclusionary language of the policy. In fact, the Defendants knew and believed that any claims of any kind against this particular business involving their background check services would be preempted by the FCRA and knew they would never have to provide any coverage for this business. Defendants intentionally concealed this information and took the Plaintiff's premiums intentionally representing that the business had liability coverage for errors and omissions in the performance of these services. The Defendants knew that ICI paid these premiums intending to purchase liability coverage for their errors and omissions in connection with this business, knew that the business' primary function was in employment background checks and knew that they were deceiving ICI into believing there was liability coverage where none existed. The individual applications at each renewal reflect the communication at the time of each renewal and the Defendants exchanged this information each year with awareness of the illusory nature of their promised coverage and without ever making any type of disclosure with respect to the same. On information and belief, there are other false representations and documentation that have been concealed by the Defendants that may need to be supplemented if discovered. Plaintiff will immediately supplement any factual details with specificity that the Plaintiff can identify that are not set forth above.

22. The described representations were material and false and made at a time when Defendants knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

23. The described representations were made with the intention that Plaintiff should act upon them in purchasing this CGL policy and the Plaintiff did rely upon them to their detriment.

24. The described representations were words or conduct which creates an untrue or misleading impression of the actual past or present facts in the mind of the Plaintiff.

25. The described omissions and non-disclosure involved concealing and failing to disclose facts which Defendants had a duty to disclose. Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Plaintiff.

26. Defendants concealed or failed to disclose these facts with the intention that they be acted upon by Plaintiff and Plaintiff did act in reliance upon it to their detriment.

27. The described false representations, concealment and deceit induced the Plaintiff to purchase this CGL coverage and Plaintiff, acting in reliance thereon, purchased and paid for the policy and lost the opportunity to secure this coverage elsewhere.

28. As a direct result of the described false representations, concealment, and deceit, Plaintiff suffered loss of the policy coverage promised to it, loss of reputation, loss of clientele business, and other consequential damages.

29. Defendant's false representations, concealment and deceit, were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Plaintiff is entitled to recover punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, First Mercury Insurance Company, for his damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to §1332 of Title 28 of the United States Code.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE

This claim is against Defendant, El Dorado only.  Plaintiff realleges all previous allegations and further alleges and states:

30. Plaintiff specifically requested El Dorado to provide E&O insurance coverage to protect his business.  Defendant El Dorado, on behalf of FMIC, assured Plaintiff that this policy provided full E&O coverage to protect him and his business. Defendant was familiar with Plaintiff's business and knew the risks for which insurance was needed and had been requested and assured Plaintiff that such coverage would be issued.

31. El Dorado failed to exercise reasonable care to insure that Plaintiff was issued a policy that provided the necessary and requested coverage for this type of business.

32. El Dorado had knowledge of the insured risk, knowledge of what had been requested and promised to be written for this business and failed to exercise ordinary care in insuring that the appropriate coverage was issued.

33. Defendants owed a duty of care to the Plaintiff and failed to exercise the ordinary care that should have been exercised under the circumstances and negligently

failed to insure that this specifically requested and promised E&O insurance was issued to cover these risks.

34. Plaintiff was damaged as a direct and proximate result of Defendants' negligence.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, El Dorado Insurance Agency, for his damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate.

MANSELL ENGEL & COLE

By: _____
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
M. Adam Engel, OBA #32384
101 Park Avenue, Suite 665
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
Firm E-mail: mec@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**